UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROBERT NEWCOMB<br>    PLAINTIFF, | :<br>:<br>: CIVIL ACTION NO. 3:11cv399(VLB)<br>:<br>v.     : APRIL 25, 2013<br>:<br>BRIAN THOMAS SWEENEY AND : <br>BETH ANN GRAVES :<br>    DEFENDANTS. : |

ORDER REMANDING COUNT 1 CLAIM TO CONNECTICUT SUPERIOR COURT
AND DISMISSING COUNT 2 CLAIM

The Plaintiff, Robert Newcomb ("Newcomb"), brings this action pursuant to Conn. Gen. Stat. 45a-98 to establish title to certain IRA accounts which are part of the estate of Krystyna Jean Sweeney (the "Decedent") against Defendants Brian Thomas Sweeney ("Sweeney") and Beth Ann Graves ("Graves") who have challenged the admission of the Decedent's will to probate naming the Plaintiff as beneficiary (Count 1). Additionally, the Plaintiff asserts a claim for slander of title in connection with statements Defendants made in probate court which allegedly derogated Plaintiff's title to the IRA assets (Count 2). For the following reasons, this Court remands the Plaintiff's Count 1 claim seeking a determination of title to the Superior Court of Connecticut, Judicial District of Litchfield, as the Court lacks subject matter jurisdiction over the this claim on the basis of the probate exception to diversity jurisdiction and dismisses Plaintiff's Count 2 claim for slander of title on the basis of absolute privilege.

**Background**

On August 18, 2010, Deborah Scott, a friend of the Decedent, filed an application to offer the Last Will and Testament of the Decedent dated June 20, 2008 for probate for the Decedent who died on July 7, 2010. [Dkt. #15, Amended Compl., ¶2]. The will has been offered in the probate court of the District of Westport, District No. 158, Case no. 10-10-121. *Id.* Newcomb is not a blood relative of the Decedent but the grandson of the Decedent's close friend. *Id.* at ¶4. At the time of her death, the Decedent was the owner of certain IRA accounts worth approximately 1.1 million dollars. *Id.* at ¶5. Newcomb alleges that he was named as the sole beneficiary of each IRA account and was also named as one of the primary beneficiaries of the Decedent's Will. *Id.* at ¶¶8-9. The Defendants are the children of Thomas Sweeney, deceased, and Gloria Sweeney deceased. *Id.* at ¶10. The Decedent married Thomas Sweeny after the demise of Gloria Sweeny and was the surviving widow of Thomas Sweeney and the stepmother of the Defendants. *Id.* at ¶11.

The Defendants have challenged the admission of the Decedent's will to probate, alleging that the testator lacked testamentary capacity, that the will was the product of undue influence, not in proper form, and the result of mistake. *Id.* at ¶13. The Defendants have also challenged the title to the IRA accounts in accordance with Conn. Gen. Stat. §45a-98 based upon their claim that the will should not be admitted. *Id.* at ¶14. On December 20, 2010, Newcomb filed an affidavit with the Westport Probate Court notifying the court of his intention to

2

pursue a jury trial to establish title to the IRA accounts and right to receive the proceeds to those accounts as permitted by Conn. Gen. Stat. §45a-98.  *Id.* at ¶17.

In the First Count of the Amended Complaint, Newcomb seeks to establish title to the IRA  accounts and right to receive the proceeds of those accounts as permitted by Conn. Gen. Stat. §45a-98. *Id.*  Section 45a-98 sets forth the general powers of the probate court in Connecticut:

> Courts of probate in their respective districts shall have the power to … admit wills to probate of persons who have died domiciled in their districts or of nondomiciliaries whose wills may be proved in their districts as provided in section 45a-287…[and] except as provided in section 45a-98a or as limited by an applicable statute of limitations, determine title or rights of possession and use in and to any real, tangible or intangible property that constitutes, or may constitute, all or part of any trust, any decedent's estate, or any estate under control of a guardian or conservator, which trust or estate is otherwise subject to the jurisdiction of the Probate Court, including the rights and obligations of any beneficiary of the trust or estate and including the rights and obligations of any joint tenant with respect to survivorship property.

Conn. Gen. Stat. §45a-98(a).

Further, the statute provides that the "jurisdiction of courts of probate to determine title or rights or to construe instruments or to apply the doctrine of cy pres or approximation pursuant to subsection (a) of this section is concurrent with the jurisdiction of the Superior Court and does not affect the power of the Superior Court as a court of general jurisdiction."  Id. at §45a-98(b).

Pursuant to Section 45a-98a:

> The Probate Court shall have jurisdiction under subdivision (3), (4) or (5) of subsection (a) of section 45a-98 only if (1) the matter in dispute is not pending in another court of competent jurisdiction and (2) the Probate Court does not decline jurisdiction.   Before the initial hearing on the merits

3

> of a matter in dispute in which jurisdiction is based on subdivision (3), (4) or (5) of subsection (a) of section 45a-98, the Probate Court may, on its own motion, decline to take jurisdiction of the matter in dispute.  Before the initial hearing on the merits of such a matter, any interested person may file an affidavit that such person is entitled and intends under section 52-215 to claim a trial of the matter by jury. In that case, the Probate Court shall allow the person filing the affidavit a period of sixty days within which to bring an appropriate civil action in the Superior Court to resolve the matter in dispute. If such an action is brought in the Superior Court, the matter, after determination by the Superior Court, shall be returned to the Probate Court for completion of the Probate Court proceedings.

Conn. Gen. Stat. §45a-98a.  As Newcomb had filed an affidavit seeking to claim a trial of the matter of his entitlement to the IRA accounts pursuant to Section 45a-98a, the probate court permitted him to bring this civil action in Connecticut superior court.  Upon filing of the civil action in superior court, the Defendants removed the action to this Court on the basis of diversity jurisdiction.  See [Dkt. #1].

In the Second Count of the Amended Complaint, Newcomb asserts that the Defendants are liable for slander of title.   Newcomb alleges that the statements of the Defendants "as set forth in their challenge to title of the IRAs as filed in probate court having been published in the probate court are a false statement derogatory to plaintiff's title."  [Dkt. #15, Amended Compl., ¶2].

Analysis

This Court lacks subject-matter jurisdiction to entertain Plaintiff's Count 1 claim under the probate exception to federal jurisdiction.  *Lefkowitz v. Bank of New York*, 528 F.3d 102, 105 (2d Cir. 2007).  "The 'probate exception' is an historical aspect of federal jurisdiction that holds 'probate matters' are excepted from the scope of federal diversity jurisdiction."  *Id.* at 105 (citing *Marshall v.*

4

*Marshall*, 547 U.S. 298, 307 (2006)).  "As the Supreme Court recently clarified, the probate exception 'reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.'"  *Id.* (quoting *Marshall,* 547 U.S. at 311).  "The probate exception does not, however, bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction."  *Id.* (internal quotation marks and citation omitted).

The Second Circuit has explained that before the Supreme Court's recent decision in *Marshall,* "most federal courts, including ours, had interpreted the probate exception more broadly than the Supreme Court has now defined it." *Id.* The Supreme Court in *Marshall* clarified that the probate exception will not apply where a plaintiff neither seeks to administer an estate, probate a will, or do any other purely probate matter nor seeks to "reach a res in the custody of a state Court." 547 U.S. at 312.  Therefore the Second Circuit directs that "under the clarified probate exception a federal court should decline subject-matter jurisdiction only if a plaintiff seeks to achieve either of these ends in federal court."  *Lefkowitz*, 528 F.3d at 106.  "As now defined, that exception ensures that certain matters are left to state courts to resolve and that no federal court will interfere with state courts' jurisdiction over those matters properly confided to them.  This limited application of the exception also ensures that where exercise of federal jurisdiction will result in a judgment that does not dispose of property in the custody of a state probate court, even though the judgment may be

5

intertwined with and binding on those state proceedings, the federal courts retain their jurisdiction." *Id.* Accordingly, the Second Circuit instructs that "[f]ollowing *Marshall* we must now hold that so long as a plaintiff is not seeking to have the federal court administer a probate matter or exercise control over a res in the custody of a state court, if jurisdiction otherwise lies, then the federal court may, indeed must, exercise it." *Id.*

Here, Newcomb's Count 1 claim seeks to have this Court both administer a probate matter and exercise control over a res in the custody of the state, which falls squarely within the scope of the clarified probate exception. In Count 1, Newcomb seeks to have the Court determine that he has title to an asset of the Decedent's probate estate, namely the IRA accounts, and further seeks the a res of the probate estate, namely the proceeds of the IRA accounts, which is a power expressly conferred to probate courts under Connecticut's probate statute. See Conn. Gen. Stat. §45a-98(a) ("Courts of probate in their respective districts shall have the power to….determine title or rights of possession and use in and to any real, tangible or intangible property that constitutes, or may constitute, all or part of any trust, any decedent's estate").

Although the particular matter was removed from probate court to Connecticut superior court pursuant to Conn. Gen. Stat. §45a-98a before being removed to this Court, the initial removal from probate court did not convert the action into a non-probate matter. First, the probate statute expressly provides that "jurisdiction of courts of probate to determine title or rights or to construe instruments…is concurrent with the jurisdiction of the Superior Court." Conn.

6

Gen. Stat. §45a-98(b).  Second, the probate statute provides that a matter may be removed to superior court where the probate court declines to take jurisdiction or where a party seeks trial by jury (as the probate court does not have the power to conduct jury trials).  Conn. Gen. Stat. §45a-98a.  After the matter is resolved in superior court, it is returned to the probate court for completion of the probate proceedings.  *Id.*  Connecticut's probate statutory scheme indicates that the superior court is exercising probate jurisdiction when it hears a matter which is removed to it from the probate court pursuant to Conn. Gen. Stat. §45a-98a.  Newcomb's Count 1 claim clearly involves a claim of probate jurisdiction regardless of whether the probate court or the superior court pursuant to Conn. Gen. Stat. §45a-98a considered the claim.   Accordingly, the probate exception to diversity jurisdiction applies to Newcomb's Count 1 claim as Newcomb is seeking to have this Court administer a purely probate matter and exercise control over a res in the custody of the state probate court.   The Court therefore does not have subject matter jurisdiction over Newcomb's Count 1 claim and therefore removal of this claim was improper.

However, Newcomb's Count 2 slander of title claim would not fall within the scope of the clarified probate exception as he neither seeks the Court to administer a purely probate matter nor to reach a res in the custody of the state probate court.  Nevertheless, Newcomb is barred from recovering damages under his slander of title claim by the absolute privilege that applies to statements made or published in the course of judicial proceedings in Connecticut.  "It is well settled that communications uttered or published in the course of judicial

proceedings are absolutely privileged [as] long as they are in some way pertinent to the subject of the controversy.... The effect of an absolute privilege is that damages cannot be recovered for the publication of the privileged statement even if the statement is false and malicious." *Gallo v. Barile,* 284 Conn. 459, 465-66 (2007) (internal quotation marks and citation omitted); *Kelley v. Bonney*, 221 Conn. 549, 565-66 (1992) ("The effect of an absolute privilege in a defamation action is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously"). Newcomb predicates his slander of title claim based on statements the Defendants allegedly made in a judicial proceeding which were pertinent to the subject of the controversy in that proceeding, namely whether the Decedent's will was valid. Accordingly, the doctrine of absolute privilege bars recovery of damages on Newcomb's slander of title claim and therefore the Court dismisses this claim as barred by absolute privilege.

### Conclusion

Based upon the above reasoning, the Court severs Newcomb's Count 1 claim for determination of title and remands it to the Superior Court of Connecticut, Judicial District of Litchfield as the Court lacks subject-matter jurisdiction over this claim based on the probate exception. The Court then dismisses Newcomb's remaining Court 2 claim for slander of title as barred by the doctrine of absolute privilege.

                                **IT IS SO ORDERED.**

                                _____/s/_____
                                **Hon. Vanessa L. Bryant**
                                **United States District Judge**

**Dated at Hartford, Connecticut: April 25, 2013**